IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
In re:                        )
     US AIRWAYS, INC. et al., )
                              )
     Reorganized Debtors.     )
                              )    1:06cv534
PHILLIP H. FRAZIER,           )
                              )
          Appellant,          )
                              )
     v.                       )
                              )    Case No. 04-13819-SSM
US AIRWAYS, INC.              )    Jointly Administered
                              )    Chapter 11
          Appellee.           )
```

**MEMORANDUM OPINION**

Before the Court is the appeal of Phillip H. Frazier ("Frazier") of the decision of the United States bankruptcy court granting summary judgment in favor of US Airways, Inc. ("US Airways") on Frazier's claim for $9.06 million, which was based on allegations that a contempt motion filed against Frazier by US Airways in a chapter 11 proceeding constituted unlawful retaliation, malicious prosecution, and intentional infliction of emotional distress.

The bankruptcy court found that Frazier failed to forecast sufficient evidence to rebut US Airways's legitimate, non-retaliatory reasons for filing the contempt motion. That finding was fully supported by the record and will not be disturbed. Accordingly, this Court will affirm the decision of the bankruptcy court.

I. Background and Procedural History

Frazier and US Airways have engaged in several rounds of litigation in the bankruptcy court, the filings for which fill several volumes. A brief history of this litigation is set forth below.

A. Employment History

Frazier began working for US Airways in 1973 and has held a number of positions involving passenger service and flight operations throughout his employment. From 1990 until 2001 he was employed as a fleet service agent in the operations section. His employment was without incident until July 2, 1999, when he sustained an injury to his ankle while offloading baggage from an airplane. That injury limited his ability to do heavy lifting. Although diagnosed with an ankle strain, Frazier suffered from chronic ankle problems through at least July 2003. He went on limited duty at least twice during this time.

In the spring of 2001, Frazier submitted a formal request to US Airways for a reasonable accommodation to his job as a fleet service agent. US Airways denied this request, finding that Frazier could not perform the essential functions of his job and therefore was not entitled to an accommodation. In the summer of 2001, having exhausted all of his accrued vacation time and sick time, Frazier was placed on an unpaid medical leave of absence.

2

B. Litigation History

There are three separate timelines of litigation between these two parties. The first involves Frazier's initial claim against US Airways, which was filed as a proof of claim during US Airways's first bankruptcy proceeding ("first proof of claim"). This timeline begins in 2002 and ends in 2006. The second involves Frazier's filing of a charge with the Equal Employment Opportunity Commission ("EEOC"), an event that occurred after the filing of the first proof of claim but before that proof of claim was litigated on the merits ("EEOC complaint"). This timeline begins in 2003 and ends in 2004. The third and final timeline involves Frazier's second proof of claim against US Airways, which occurred during US Airways's second bankruptcy proceeding ("second proof of claim"). This timeline begins in 2005; this second proof of claim is at issue in this appeal.


1. The First Proof of Claim

After US Airways and six affiliates filed a chapter 11 petition in the bankruptcy court on August 11, 2002, the bankruptcy court began accepting proofs of claim. On October 31, 2002, approximately two months after US Airways filed its petition and 17 months after he was placed on unpaid medical leave, Frazier filed his first proof of claim against US Airways

3

alleging that it discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12203 (a)-(b), and the California Fair Employment and Housing Act. He based this claim on US Airways's failure to accommodate his disability by altering his job as a fleet service agent so that he could perform it. He initially sought $126,377.88 in damages, but later tried to file two more identical proofs of claim on these charges, amending his damages demand to $24 million. These amendments were denied by the bankruptcy court.

On March 18, 2003, the bankruptcy court confirmed the reorganization plan in the chapter 11 proceeding. Frazier's first proof of claim was finally litigated in February 2004, when the bankruptcy court granted summary judgment to US Airways after finding that Frazier was not protected by the ADA because his ankle injury and its resulting limitations did not amount to the type of physical impairment the ADA covers. Preserved for trial was the issue of whether US Airways had maintained a "100% healed" policy that would be a <u>per se</u> violation of the ADA.

At trial, the bankruptcy court found that Frazier lacked standing to challenge the alleged "100% healed" policy because of its earlier finding that Frazier was not protected by the ADA. In the alternative, the bankruptcy court found that the evidence regarding the existence of a "100% healed" policy was in

equipoise at best, and therefore Frazier did not meet his burden of proving a violation of the ADA on that issue. The bankruptcy court's decisions were fully affirmed by the district court and Frazier's further appeal to the Fourth Circuit was dismissed. Frazier v. US Airways Group, Inc., No. 04-2143 (4th Cir. April 18, 2006) (per curiam) reh'g en banc denied (May 31, 2006).


2. The EEOC Complaint

In February 2003, before the plan was confirmed and while his first proof of claim was pending in the bankruptcy court, Frazier sought relief from the automatic stay imposed by the bankruptcy proceedings to pursue various discrimination claims in state court. The bankruptcy court did not immediately rule on Frazier's motion for relief. However, on March 18, 2003, as part of its confirmation of the chapter 11 plan, the bankruptcy court imposed a discharge injunction which barred pursuit of all pre-petition claims. In May 2003, the bankruptcy court heard arguments on Frazier's motion for relief from the automatic stay, which it treated as a motion for relief from the discharge injunction. In its Memorandum Opinion, the bankruptcy court denied the motion after concluding that Frazier had failed to establish cause to grant relief from the discharge injunction to allow him to litigate his pre-confirmation employment discrimination claims in state court.

Frazier did not appeal that decision, however, on June 27, 2003, he filed a complaint with the EEOC alleging discrimination claims against US Airways based on race, age, disability, and retaliation with regard to actions occurring between March 31, 2003 and June 26, 2003.[1]

US Airways notified Frazier that the EEOC complaint was filed in violation of the discharge injunction and asked him to withdraw it. At the same time, US Airways notified the EEOC that it would not respond to Frazier's complaint because the complaint violated the discharge injunction. When Frazier did not withdraw his complaint, US Airways filed a Motion for Contempt and Sanctions in the bankruptcy court.

The bankruptcy court held a hearing on the contempt motion on October 23, 2003, during which US Airways argued that the EEOC complaint was based on the same underlying facts and allegations as the proof of claim pending in the bankruptcy court, despite Frazier attributing March 31, 2003 as the starting date for the acts of discrimination and retaliation. In particular, US Airways pointed out that no further action had occurred between Frazier and US Airways since his first proof of claim was filed, because he was still on medical leave.

---

[1] The narrative statement included on the EEOC claim form is vague, and the only specific action US Airways is alleged to have taken is to have denied reinstatement based on a 100% healed policy.

The bankruptcy court, however, found that although the EEOC complaint "mirrored" the allegations in the first proof of claim, it could be construed as legally distinct from the original claim because it limited itself to post-confirmation dates and alleged a continued refusal to reinstate Frazier. The bankruptcy court warned Frazier not to resurrect any of his pre-confirmation claims, but concluded that Frazier had not yet violated the injunction. US Airways withdrew the contempt motion at the hearing. With the contempt motion withdrawn, the parties proceeded to litigate Frazier's first proof of claim, which, as previously discussed, was resolved in favor of US Airways.

However, the EEOC proceeded to investigate Frazier's complaint, and on July 1, 2004, it issued its Determination in response to the claim filed in June 2003. The Determination found reasonable cause to believe Frazier's allegations.[2] A Right to Sue letter was issued on July 22, 2004.

3. The Second Proof of Claim

On September 12, 2004, US Airways filed a new petition for bankruptcy protection under chapter 11.[3] Frazier filed a new

---

[2] Specifically, it wrote, "Examination of the evidence reveals reasonable cause to believe that Charging Party was retaliated against based upon his protected activity in violation of Title VII, the ADEA, and the ADA."

[3] By this time, Frazier had returned to work at US Airways. The plan of reorganization in the second bankruptcy case was confirmed on July 28, 2005.

complaint in the bankruptcy court on January 28, 2005. That complaint was treated as a proof of claim in the second bankruptcy proceeding. In this second proof of claim, Frazier sought $9 million in damages for discrimination and retaliation involving the same underlying facts and allegations as the first proof of claim, including claims for violation of the ADA and the California Fair Employment and Housing Act, a claim of retaliation under Title VII of the Civil Rights Act of 1964 as amended (29 U.S.C. § 2000e-3(a)), and claims for intentional infliction of emotional distress and malicious use of process. US Airways objected to the claim as the bankruptcy proceeding continued through 2005.

Several months later, Frazier requested a stipulation from US Airways permitting him to file an amended complaint, which he did on October 28, 2005. In his amended complaint, Frazier abandoned all claims regarding disability, race, and age discrimination and reinstatement, leaving only claims of retaliation under Title VII, intentional infliction of emotional distress, and malicious use of process, all based on US Airways's filing the Motion for Contempt and Sanctions in the first bankruptcy proceeding.

In November 2005, both Frazier and US Airways filed for summary judgment on the Amended Complaint. The motions were fully briefed, and argued in December 2005. In March 2006 the

8

bankruptcy court issued an Order and Memorandum Opinion granting summary judgment to US Airways. Frazier timely appealed this decision to this Court.

## II. Discussion

### A. Standard of Review

A bankruptcy court's findings of fact may only be set aside by a district court exercising appellate review if they are clearly erroneous. Fed. R. Bankr. P. 8013. A district court's review of legal conclusions and mixed questions of law and fact, however, are de novo. In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992).

Motions for summary judgment raise mixed questions of law and fact. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1985). In ruling on a motion for summary judgment, a court should believe the evidence of the nonmovant, and all justifiable inferences must be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### 1. Retaliation

Lacking any direct evidence of retaliation, in analyzing whether Frazier has made a sufficient claim for retaliation, the McDonnell Douglas burden shifting framework is the appropriate test. Under that framework, Frazier must first make a prima facie

9

case by showing that (1) he engaged in a protected activity; (2) US Airways took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. <u>Tinsey v. First Union Nat'l Bank</u>, 155 F.3d 435, 443 (4th Cir. 1998). Specifically, if Frazier is able to show that the filing of the EEOC complaint triggered an adverse employment action, a <u>prima</u> <u>facie</u> case would be made and the burden then shifts to US Airways to articulate a legitimate, non-retaliatory reason for its action. If US Airways carries this burden, then to overcome summary judgment Frazier must present some evidence that the company's proffered explanation is merely a pretext for retaliation.

Frazier clearly engaged in protected activity and in direct response to that protected activity, the defendant filed its contempt motion. An employer's filing of a contempt motion in litigation relating to a legitimate discrimination claim brought by an employee may not actually affect the terms and conditions of employment, but it may constitute an "adverse employment action." <u>See</u> <u>Burlington Northern and Sante Fe Ry. Co. v.</u> <u>White</u>,126 S.Ct. 2405, 2411 (2006) (holding that application of the retaliation provision of Title VII is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those that occur at the workplace because, the Court concluded, the scope of the retaliation provision is

broader than that of Title VII's substantive discrimination
provision).

Broadly construing the adverse employment action, the
bankruptcy court correctly found that Frazier had made out a
prima facie case of retaliation by US Airways.

However, the bankruptcy court also found that US Airways
presented a legitimate, non-retaliatory reason for its action;
namely, that it sought to protect the debtor's estate against
what it reasonably believed to be a violation of the discharge
injunction issued by the bankruptcy court.[4] Although the contempt
motion was dismissed after US Airways withdrew it, given
Frazier's demonstrated tendency to file unreasonable multi-
million dollar claims, US Airways's effort to protect itself was
reasonable. The pattern of litigation between these two parties
buttresses the bankruptcy court's conclusion that US Airways's
response to the filing of the EEOC complaint was justified.

With that finding, the burden shifted back to Frazier to
produce evidence that US Airways's proffered explanation was
really a pretext for retaliation. The record clearly demonstrates

---

[4] That injunction barred "all Persons [from] commencing or
continuing in any manner any Claim, action, or other proceeding
of any kind with respect to any Claim...against Reorganized Group
or any other Reorganized Debtor, which they possessed or may
possess prior to the Effective Date[.]...." In re US Airways
Group, Inc., No. 02-83984-SSM (Bankr. E.D. Va., Mar. 18, 2003),
Order of Confirmation at 35; sec. 524(a)(2), Bankruptcy Code.

that Frazier presented no such evidence. In fact, the only "evidence" asserted by Frazier were his own declarations. Without more, such declarations do not rebut a non-retaliatory explanation. Goldberg v. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988).

Frazier tried to rely on the EEOC finding of "reasonable cause" to conclude that the contempt motion was filed in retaliation for his EEOC complaint. Reliance on an EEOC administrative finding has been held by the Fourth Circuit to be insufficient evidence to avoid summary judgment. Goldberg, 836 F.2d at 848 (an EEOC finding is not "sufficiently probative to create a genuine issue of material fact about [the Company's] intent to discriminate").

Because Frazier failed to present any evidence other than his own assertions that the explanation given by US Airways for filing the contempt motion was pretextual, Frazier failed to establish a dispute over a genuine issue of material fact. US Airways was entitled as a matter of law to summary judgment on the retaliation claim.

2. Malicious Prosecution

Given the specific allegations in the second proof of claim, the bankruptcy court correctly construed them under Virginia law as claims of malicious prosecution and intentional infliction of

12

emotional distress.[5]

To establish a _prima_ _facie_ case of malicious prosecution under Virginia law, a plaintiff must prove that (1) the defendant instituted a prior proceeding against the plaintiff; (2) the proceeding was instituted without probable cause; (3) the proceeding was instituted with malice; (4) the underlying proceeding terminated in the plaintiff's favor; and (5) the plaintiff sustained special damages as a result of the proceeding. Tomai-Minogue v. State Farm Mut. Auto. Ins. Co., 770 F.2d 1228, 1236-37 (4th Cir. 1985).

As the bankruptcy court found, US Airways had probable cause to file the motion for contempt, even though the motion was ultimately resolved in Frazier's favor. The vague nature of Frazier's EEOC complaint reasonably led US Airways to believe that the discharge injunction may have been violated. Frazier's extensive litigation bolsters the finding of the bankruptcy court that US Airways was justified in its belief that the debtor's estate needed to be protected. Further, Frazier has failed to show special damages, defined under Virginia law as "proof of a special loss or unusual hardship resulting from malicious prosecution." Ayyildiz v. Kidd, 220 Va. 1080, 1083 (1980).

---

[5] Frazier did not dispute the bankruptcy court's interpretation of his claim this way and in fact adopted this re-characterization of his claim in his opening brief. See Appellant's Opening Brief at 5.

Because Frazier failed to point to any evidence that would establish a prima facie case for malicious prosecution, summary judgment for US Airways was appropriate.

## 3. Intentional Infliction of Emotional Distress

Frazier's claim for intentional infliction of emotional distress is similarly without merit. The tort of intentional infliction of emotional distress is "not favored" in Virginia law. See Ruth v. Fletcher, 237 Va. 366, 371 (1989). To establish a prima facie claim of intentional infliction of emotional distress, a plaintiff must show that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality; (3) the wrongdoer's conduct caused the emotional distress; and (4) the emotional distress was severe. Womack v. Eldridge, 215 Va. 338, 341 (1974). The effect of the wrongdoer's conduct on the plaintiff must be so severe that no reasonable person could be expected to endure it. See Barrett v. Applied Radiant Energy Corp., 240 F.3d 262 (4th Cir. 2001).

Frazier has failed to establish that filing a motion for contempt constitutes "outrageous and intolerable" conduct that offends generally accepted standards of decency. He also fails to present evidence of emotional distress of the severity required under Virginia law absent physical injury. See Russo v. White, 241 Va. 23, 28 (1991); Ruth, 237 Va. at 373. Frazier has asserted

14

sleepless nights and evidence of depression and stress after being served with the contempt motion. These symptoms do not equate to "severe" emotional distress as required under Virginia law.

Because Frazier has not presented evidence to show that the conduct of US Airways was outrageous or that any emotional distress caused by the filing of the contempt motion rose to the level of severity required under Virginia law, the bankruptcy court correctly determined that summary judgment should be entered in favor of US Airways on that claim.

## III. Conclusion

For the reasons stated above, the decision of the bankruptcy court will be AFFIRMED.

A separate order consistent with this opinion will be entered.

Entered this 3rd day of October, 2006.

                                    _____/s/_____
                                    Leonie M. Brinkema
                                    United States District Judge

Alexandria, Virginia